## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |  |
|---|---|---|
| | : | |
| | : | |
| PEACHTREE/STRATFORD, L.P., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 1:06-CV-0514-RWS |
| PHOENIX HOME LIFE | : | |
| INSURANCECOMPANY; PHOENIX | : | |
| LIFE INSURANCE COMPANY; | : | |
| iSTAR ASSET SERVICES, INC.; | : | |
| KEITH V. HOLLEBONE; | : | |
| WOMBLE, CARLYLE, | : | |
| SANDRIDGE & RICE, PLLC; | : | |
| R. RUSSELL BERRY and unknown | : | |
| entities or individuals to be named as | : | |
| John Doe-3 through John Doe-10, | : | |
| | : | |
| Defendants. | : | |

## ORDER

Now before the Court is Plaintiff's Motion to Remand to State Court and

for Attorney's Fees [37]. After considering the entire record, the Court enters

the following Order.

## Background

This case arises out of the foreclosure and sale of certain real property

located in Atlanta, Georgia (the "Property").  In 1989, Stratford Holdings, L.P.,

Plaintiff's predecessor in interest in the Property, borrowed in excess of eight

million dollars from Home Life Insurance Company (which later merged with

Defendant Phoenix Life Insurance Company ("Phoenix")) and pledged the

Property, as well as an existing lease, as security for the loan.  The loan was

evidenced by a Real Estate Note and was secured by a Deed to Secure Debt and

Security Agreement which granted Phoenix, <u>inter alia</u>, the power to sell the

Property at public auction in the event that Stratford Holdings defaulted on its

loan obligations.

In November 1995, Plaintiff acquired by Limited Warranty Deed the

interest of Stratford Holdings in the Property.  Under the terms of that deed,

Plaintiff's interest in the Property was subject to the Deed to Secure Debt.

Additionally, on the same day, Plaintiff contractually agreed to assume all

obligations of Stratford Holdings under the Real Estate Note and Deed to

Secure Debt.  In July 1999, the loan matured and all sums due under the Real

Estate Note became due and payable.  Plaintiff defaulted on its obligations, and

as a result, Phoenix retained Mr. Berry, an attorney with the firm of Womble,

Carlyle, Sandridge & Rice, PLLC ("Womble Carlyle"), who on Phoenix's

behalf, demanded payment and provided Plaintiff with notice of a scheduled foreclosure sale.  Although Phoenix initially agreed to postpone the foreclosure sale pursuant to a series of four forbearance agreements, Plaintiff eventually ceased all payments to Phoenix and, in April 2001, Phoenix advertised the Property for foreclosure sale to be conducted on May 1, 2001.

On April 30, 2001, one day before the foreclosure sale was scheduled to take place, Plaintiff filed a petition for Chapter 11 bankruptcy.  While Plaintiff's bankruptcy petition was pending, Phoenix received an offer to purchase the Property for 6.25 million dollars from Songy Buckhead Associates ("Songy"), and based on this offer, Phoenix moved the Bankruptcy Court to have the petition dismissed.  On June 3, 2003, the Bankruptcy Judge orally granted Phoenix's motion, and three days later, on June 6, 2003, entered a written order of dismissal.  Plaintiff did not appeal the Bankruptcy Court's ruling.

On June 5, 2003, after the issuance of the Bankruptcy Court's oral order, but before the entry of the written order of dismissal, Mr. Berry again contacted Plaintiff and advised it of Phoenix's intent to sell the Property pursuant to the power of sale contained in the Deed to Secure Debt.  Phoenix's opening bid on

the Property was set at six million dollars and this amount was disclosed by Mr.

Berry to Songy.  The foreclosure sale was conducted on July 1, 2003 and Songy

purchased the Property for $6,000,001.

In June 2005, Plaintiff filed its original Complaint in the Superior Court

of Fulton County, Georgia.  Plaintiff's original Complaint named a number of

defendants which were residents of the State of Georgia; Phoenix, iStar Asset

Services, Inc., and Keith V. Hollebone (collectively "Removing Defendants");

as well as "certain unknown entities or individuals to be named as John Doe-1

through John Doe-10."  Plaintiff alleged various causes of action including

ejectment, trespass, breach of contract, breach of fiduciary duty, fraud, libel and

slander to title, wrongful foreclosure, and civil conspiracy.  On September 6,

2005 and October 3, 2005, Plaintiff filed its First and Second Amended

Complaints respectively.  In its Second Amended Complaint, Plaintiff alleged,

inter alia, that Defendants violated the automatic bankruptcy stay by publishing

at least one foreclosure notice prior to the entry of the written order dismissing

Plaintiff's petition in bankruptcy, as well as the wrongful disclosure of

Phoenix's opening bid.  Plaintiff did not name Mr. Berry or Womble Carlyle in

either amended complaint.

4

In November 2005, the Superior Court granted summary judgment in favor of certain defendants and Plaintiff appealed.  While the matter was pending on appeal, Plaintiff entered into a settlement agreement with the non-diverse defendants and, on February 3, 2006, voluntarily dismissed its claims against these defendants.  On February 17, 2006, three days before the Superior Court entered an order dismissing the non-diverse defendants, Plaintiff filed its Third Amended Complaint which substituted Mr. Berry and Womble Carlyle for "John Doe-1" and "John Doe-2" respectively.  It is undisputed that Plaintiff did not obtain leave from the Superior Court before filing its Third Amended Complaint.

On March 3, 2006, Removing Defendants removed this action to this Court on the basis of diversity of citizenship.  In support of removal, these Defendants allege that, (1) because Plaintiff failed to obtain leave of court, Plaintiff's Third Amended Complaint was ineffective to add Mr. Berry to this action, and (2) Plaintiff's joinder of Mr. Berry was fraudulent and calculated to avoid removal of this action.  Plaintiff now seeks remand of this action to the Superior Court of Fulton County, Georgia.

5

## Discussion

### I. Applicable Standard

Unless Congress explicitly provides otherwise, a defendant may remove to federal court a civil action brought in state court, provided that the federal court has original jurisdiction over the action.  28 U.S.C. § 1441(a)-(b). Original jurisdiction may be based on a federal question or on diversity of citizenship.  28 U.S.C. §§ 1331-1332.

Where the court's removal jurisdiction is predicated on diversity of citizenship, several constraints on the exercise of jurisdiction exist.  First, complete diversity is required.  That is to say, every plaintiff must be diverse from every defendant.  Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998).  Second, even where there is complete diversity, removal jurisdiction is expressly proscribed in cases where a properly joined and served defendant is a citizen of the state where the action was originally brought.  28 U.S.C. § 1441(b) ("Any other action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."); see Caterpillar Inc. v. Lewis,  519 U.S. 61, 68, 117 S. Ct. 467, 136 L. Ed. 2d 437 (1996) (when a plaintiff files in state

court a civil action over which the federal district courts would have original

jurisdiction based on diversity of citizenship, the defendant may remove the

action to federal court, provided that no defendant is a citizen of the State in

which such action is brought).

The party seeking removal bears the burden of establishing federal

jurisdiction. Friedman v. New York Life Ins. Co, 410 F.3d 1350, 1353 (11th

Cir. 2005). Removal statutes should be construed narrowly with any doubt

resolved in favor of remand. Allen v. Christenberry, 327 F.3d 1290, 1293 (11th

Cir. 2003); Diaz v. Sheppard, 85 F.3d 1502, 1505 (11th Cir. 1996); see also

Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994) ("Defendant's

right to remove and plaintiff's right to choose his forum are not on equal

footing; . . . removal statutes are construed narrowly; where plaintiff and

defendant clash about jurisdiction, uncertainties are resolved in favor of

remand."). Sound reasons exist for so limiting the exercise of removal

jurisdiction. Initially, the removal of causes to federal courts implicates

principles of federalism. As the Supreme Court has explained:

> The power reserved to the states under the Constitution to provide for
> the determination of controversies in their courts, may be restricted
> only by the action of Congress in conformity to the Judiciary Articles

of the Constitution. "Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined."

Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 109, 61 S. Ct. 868, 85 L. Ed. 1214 (1941) (quoting Healy v. Ratta, 292 U.S. 263, 270, 54 S. Ct. 700, 78 L. Ed. 1248 (1934)).  What is more, resolving any doubt in favor of remand "prevents exposing the plaintiff to the possibility that he will win a final judgment in federal court, only to have it determined that the court lacked jurisdiction on removal, a result that is costly not just for the plaintiff, but for all the parties and for society when the case must be relitigated."  Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997) (internal quotations omitted).

A plaintiff is the master of his own complaint.  As such, he remains free to join such claims or parties in a single action as are permitted under the law and the Federal Rules of Civil Procedure.  The same is no less true where a plaintiff's decision to join a non-diverse or forum-resident party may have repercussions for purposes of removal jurisdiction.  See, e.g., Triggs, 154 F.3d at 1291 (stating that "the motive of the plaintiff [in joining defendants], taken by itself, does not affect the right to remove"); see also Garbie v.

8

DaimlerChrysler Corp., 211 F.3d 407, 410 (7th Cir. 2000) ("Even if the [non-diverse parties] were added to prevent removal, that is their privilege; plaintiffs as masters of the complaint may include (or omit) claims or parties in order to determine the forum."); Boyer v. Snap-on Tools Corp., 913 F.2d 108, 110 (3d Cir. 1990) ("[P]laintiffs have the option of naming those parties whom they choose to sue, subject only to the rules of joinder of necessary parties.  While the plaintiffs' decision in this regard may have repercussions for purposes of diversity jurisdiction, there is no reason for a court to interfere with this inevitable consequence of a plaintiff's election unless the plaintiff had impermissibly manufactured diversity or used an unacceptable device to defeat diversity.").

The aforementioned rule, however, is not without exception.  A defendant's statutory "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy." Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97, 42 S. Ct. 35, 66 L. Ed. 144 (1921).  Thus, courts have established the doctrine of fraudulent joinder to allow the removal of a case to federal court despite the presence of a non-diverse or forum-resident defendant.  The Eleventh Circuit has identified three

situations in which fraudulent joinder may be applicable.

> The first is when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant. [cits.] The second is when there is outright fraud in the plaintiff's pleading of jurisdictional facts. [cit.] [The third] is where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant.

Triggs, 154 F.3d at 1287.

"The burden of establishing fraudulent joinder is a heavy one," Pacheco de Perez v. AT & T Co., 139 F.3d 1368, 1380 (11th Cir. 1998), and such a claim must be "supported by clear and convincing evidence."  Parks v. New York Times Co., 308 F.2d 474, 478 (5th Cir. 1962); see also, e.g., Everett v. MTD Products, Inc., 947 F. Supp. 441, 444-45 (N.D. Ala. 1996) ("A defendant has a high burden in establishing fraudulent joinder--it must present evidence that compels the conclusion that the joinder is without right and made in bad faith.  A defendant must assert with particularity that a joinder is fraudulent and support the claim by clear and convincing evidence.") (internal quotations omitted); Nat. Union Fire Ins. Co. of Pittsburgh v. Lib. Mut. Ins. Co., 878 F. Supp. 199, 202 (M.D. Ala. 1995) (" A fraudulent joinder claim must be asserted

10

with particularity and supported by clear and convincing evidence.") (internal quotations omitted); Lane v. Champion Intern. Corp., 827 F. Supp. 701, 706 (S.D. Ala. 1993) (same).  "The determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties.  In making its determination, the district court must evaluate factual allegations in the light most favorable to the plaintiff and resolve any uncertainties about the applicable law in the plaintiff's favor."  Id.

**II.    Effect of Plaintiff's Third Amended Complaint**

Removing Defendants contend that, because Plaintiff failed to obtain leave of court prior to filing its Third Amended Complaint, that Complaint was ineffective to add Defendants Berry and Womble Carlyle.  As such, Removing Defendants contend that the Court may not consider their presence in this action for purposes of determining jurisdiction.  Plaintiff offers two bases for the Court to conclude that leave of court was unnecessary: first, Plaintiff argues that leave was not required because it was permitted to file its Third Amended Complaint as a matter of course under O.C.G.A. § 9-11-15(a) (See Mem. in

Supp. of Mot. to Remand [37] at 8); second, Plaintiff argues that leave was not required because the requirements of O.C.G.A. § 9-11-21 do not apply when the amendment substitutes a named defendant for a "John Doe" defendant in the original complaint.  (See id. at 8-11.)

### A.      Requirement that Amending Party Obtain Leave of Court

"A party may amend his pleading as a matter of course and without leave of court at any time before the entry of a pretrial order.  Thereafter the party may amend his pleading only by leave of court or by written consent of the adverse party."  O.C.G.A. § 9-11-15(a).  As a general matter, "[w]here an amended complaint adds a defendant, the party seeking to amend under O.C.G.A. § 9-11-15 must seek leave of court as required by O.C.G.A. § 9-11-21."  Harding v. Goodwin, 518 S.E.2d 910, 911 (Ga. Ct. App. 1999); see also, e.g., Dollar Concrete Const. Co. v. Watson, 428 S.E.2d 379, 380-81 (Ga. Ct. App. 1993) (stating that O.C.G.A. § 9-11-15(a) must be read in pari materia with O.C.G.A. § 9-11-21 which allows the dropping and adding of parties only by order of the court on motion of any party).  However, it is well-established in Georgia that "[w]hen there is a substitution by amendment of a 'John Doe' or 'Jane Doe' named in the original complaint for the real defendant, O.C.G.A. §

9-11-21 does not apply, and O.C.G.A. § 9-11-15(c) is applicable; therefore, leave of court is not necessary for the substitution." Smith v. Vencare, Inc., 519 S.E.2d 735, 744 (Ga. Ct. App. 1999); see also, e.g., Bishop v. Farhat, 489 S.E.2d 323, 326 (Ga. Ct. App. 1998) ("O.C.G.A. § 9-11-21 . . . does not apply when a plaintiff seeks to substitute a named defendant for a 'John Doe.' " (emphasis in original)).  In such a case, "the amendment becomes effective when filed."  Smith, 519 S.E.2d at 744.

Removing Defendants acknowledge the Georgia authorities holding that leave of court is not required to substitute a named defendant for a "John Doe." They contend, however, that these cases are inapposite because Plaintiff was aware both of Mr. Berry and Womble Carlyle's identities and its claims against them, and as such, they cannot properly be "John Doe" defendants within the meaning of O.C.G.A. § 9-11-10.  On the record before it, the Court ultimately finds Removing Defendants' contention unavailing.  To be sure, the Court acknowledges the persuasiveness of Removing Defendants' argument and, were this case before the Court in a different posture, adopting Removing Defendants' position would give the Court little pause.  But, Removing Defendants cite no Georgia authority, and the Court has found none, expressly

13

disallowing the substitution of a named defendant for a "John Doe" where the plaintiff was aware of both the identity of the defendant and facts sufficient to support at least one cause of action at the time the complaint was filed.  Because the Court must be <u>certain</u> of its jurisdiction prior to proceeding to a judgment on the merits, the Court is not inclined to expand on substantive state law or adopt a position not clearly and unambiguously supported by the authorities.  As Plaintiff's Third Amended Complaint substituted Defendants Berry and Womble Carlyle for John Doe-1 and John Doe-2 respectively, the Court concludes that the requirement of O.C.G.A. § 9-11-21 that Plaintiff first obtain leave of court is inapplicable and the amendment became effective upon its filing.  Accordingly, the Court declines to disregard the presence of Defendant Berry in this action on this ground and will assume, for purposes of its jurisdictional analysis, that Defendants Berry and Womble Carlyle were properly substituted for the "John Doe" defendants.  In the absence of some other reason to disregard their presence in this action, their joinder is sufficient to preclude the exercise of diversity jurisdiction.

**III.    Fraudulent Joinder**

Removing Defendants contend that even if Plaintiff's Third Amended

14

Complaint was sufficient to add Defendants Berry and Womble Carlyle as

parties to this action, the Court should disregard their presence for jurisdictional

purposes because they were fraudulently joined to defeat diversity jurisdiction.

In this regard, Removing Defendants raise two substantive arguments.  First,

Removing Defendants contend that Plaintiff's reliance on the substitution of

Defendants Berry and Womble Carlyle in this action for John Doe defendants in

the complaint amounted to fraudulent pleading of jurisdictional facts.  Second,

Removing Defendants contend in their Motion to Drop Defendant Berry, which

Removing Defendants purport to incorporate by reference in their Opposition to

Plaintiff's Motion to Remand, that Plaintiff cannot prove a cause of action

against Defendant Berry.  The Court addresses these contentions in reverse

order.

**A.**   **Plaintiff's alleged inability to prove a cause of action against Defendant Berry**

This action was removed to this Court by Removing Defendants on

March 3, 2006, and on March 15, 2006, Plaintiff filed its Motion to Remand.

On March 31, 2006, Plaintiff and Removing Defendants filed a Consent Motion

to Stay the resolution of nearly all matters.  In pertinent part, the Motion to Stay

15

provided:

> [Plaintiff and the Removing Defendants] have agreed
> that it would be more efficient and economical to stay
> any pending deadlines and other actions in this case,
> including the Motions for Summary Judgment,
> Motions to Dismiss and any other motions filed in the
> District Court or filed in the state court and refiled in
> the District Court case, except for the Excluded
> matters [defined as Defendant Womble Carlyle and
> Defendant Berry's response to Plaintiff's Third
> Amended Complaint and Defendants' Response to
> Plaintiff's Motion to Remand].

> [Plaintiff and the Removing Defendants] agree and
> stipulate that this case, except the Excluded Matters,
> is stayed as of March 15, 2006, the filing date of
> Plaintiff's Motion to Remand, until after the Court has
> rendered its decision on Plaintiff's Motion to Remand.

(Consent Mot. to Stay [43] ¶¶ 5-6.)  Notwithstanding this agreement, Removing

Defendants filed, concurrently with their response to Plaintiff's Motion to

Remand, a Motion to Drop R. Russell Berry as a Party [50-1].  In this motion,

Removing Defendants argue extensively that Plaintiff cannot prove a cause of

action against Defendant Berry, and as such, he should be dropped from this

action pursuant to Federal Rule of Civil Procedure 21.  In reliance on this stay,

Plaintiff elected not to file a substantive response to the arguments raised in

16

Removing Defendants' Motion to Drop.  (See Pl.'s Emerg. Mot. to Est. Briefing Sched., or in Alt. for Ext. of Time to File Resp. to Substantive Defenses [55].)

In their Opposition to Plaintiff's Motion to Remand, Removing Defendants purport to incorporate by reference the arguments made in their Motion to Drop.  Because Removing Defendants' Motion to Drop falls clearly within those matters contemplated by the Consent Motion to Stay, the Court declines to consider the arguments contained in Removing Defendants' Motion to Drop in assessing whether remand of this action is appropriate.[1]  As such, the Court turns now to the issue of whether substitution of Defendants Berry and Womble Carlyle for the John Doe defendants in the Complaint constitutes fraudulent joinder.

─────────────────────

[1] The Court is aware that the Consent Motion to Stay was not granted until April 11, 2006–one day after Removing Defendants filed their Motion to Drop.  (See Order of Apr. 11, 2006 Granting Mot. to Stay [54].)  However, at the time Removing Defendants filed their Motion to Drop, their Consent Motion to Stay was still pending before the Court.  If Removing Defendants wished to raise arguments not directly contained in their Opposition to Plaintiff's Motion to Remand, and so clearly encompassed within the Consent Motion to Stay, the only proper, and fair, course of action would have been for Removing Defendants to timely withdraw their consent to the Motion to Stay.

17

**B.      Substitution of Defendants Berry and Womble Carlyle for John Doe-1 and John Doe-2 respectively**

Removing Defendants contend in their Memorandum in Opposition to Plaintiff's Motion to Remand that, because "the names of Mr. Berry and Womble Carlyle had been known to [P]laintiff before the original complaint was filed," Plaintiff "fraudulently pled jurisdictional facts" by improperly attempting to substitute those Defendants for the John Doe defendants in the Complaint.  (Opp'n to Mot. to Remand at 26-30.)  For the reasons that follow, the Court disagrees and concludes that they have failed to meet their "heavy burden" and establish that the joinder of Defendants Berry and Womble Carlyle in this action was fraudulent.

As an initial matter, Removing Defendants' argument in this regard appears to be little more than a repackaging of the argument rejected by the Court, supra, that the substitution of Defendants Berry and Womble Carlyle was improper under Georgia law.  As the Court made clear above, it lacks the benefit any guidance from the state courts regarding the proper scope and operation of O.C.G.A. § 9-11-10(a).  In the absence of clear direction from the

18

state courts, this Court declines to pin its jurisdictional determination on a novel construction of that statute.

What is more, although the cases make clear that a defendant may establish fraudulent joinder by showing that "the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court," Pacheco de Perez, 139 F.3d at 1380 (quoting Crowe, 113 F.3d at 1538), the Court remains far from convinced that the conduct complained of in this case amounts to the fraudulent pleading of jurisdictional facts. This is simply not a case, as the authorities appear to contemplate, where the plaintiff knowingly and falsely alleges a defendant's state of residence in an effort to destroy diversity jurisdiction. See Oliva v. Chrysler Corp., 978 F. Supp. 685, 689 (S.D. Tex. 1997) (determination of whether plaintiff has fraudulently pled jurisdictional facts is limited to "whether the [non-diverse] Plaintiffs are actually citizens of [defendant's state of residence] or whether their identities were concocted and their joinder simply an improper scheme to avoid federal jurisdiction."); cf. Oh v. Ford Motor Co., 79 F. Supp. 2d 1375, 1376 (N.D. Ga. 1999) (rejecting defendant's argument in opposition to remand that plaintiff's amended complaint which misstated plaintiff's state of residence fraudulently pled

19

jurisdictional facts on grounds that diversity of citizenship is to be determined

according to facts as they existed at time of institution of lawsuit).  To the

contrary, it is undisputed that Defendant Berry is a citizen of Georgia and, if he

is a proper party to this action, his presence necessitates remand.  Thus, it is not

the allegation of his citizenship that Removing Defendants take issue with, but

rather the manner and timing of his addition to this action.

In support of Removing Defendants' position that Plaintiff's failure to

name Defendant Berry constitutes fraudulent pleading of jurisdictional facts,

Removing Defendants rely exclusively on Coker v. Amoco Oil, Co., 709 F.2d

1433 (11th Cir. 1983), superceded by statute as stated in Wilson v. General

Motors Corp., 888 F.2d 779 (11th Cir. 1989), and specifically, Judge Johnson's

dissent in that case.  For the reasons that follow, however, the Court concludes

that Coker does not provide a reasonably certain basis for the exercise of

jurisdiction.

First, Removing Defendants argue that this decision was predicated on

the Coker majority's conclusion that "the record did not 'indicate conclusively

that [the plaintiff] knew the names of the fictitious defendants by August 3,

1979,' the date [the plaintiff's] deposition was taken."  (Mem. in Opp'n to Mot.

to Remand at 27 (quoting <u>Coker</u>, 709 F.2d at 1441 n.3).)   Thus, it is Removing

Defendants' position that the <u>Coker</u> Court's holding that "[the plaintiff] has not

fraudulently joined the fictitious defendants simply by not naming them

immediately after ascertaining their identity and [the defendant] has failed to

prove fraud in [plaintiff's] pleadings of jurisdictional facts" is distinguishable

because in this case Plaintiff's knowledge of Defendant Berry's identity can be

clearly established.  The Court is not inclined, however, to adopt Removing

Defendants' reading.  The Court's review of <u>Coker</u> indicates that the court's

reference to the plaintiff's knowledge of the named defendants' identities was

made, not in reference to whether the failure to name those defendants was

fraudulent, but rather whether the claims against the defendants were barred by

the statute of limitations applicable to the plaintiff's claims.  Again, because the

Court must be certain of its jurisdiction and resolve all doubts in favor of

remand, the Court reads the majority's decision in <u>Coker</u> as standing for the

more broad proposition that the failure to name defendants originally sued as

fictitious parties does not fall within the "outright fraud in pleading

jurisdictional facts" exception to the requirement of complete diversity.

Second, on the facts of this case, the Court is not inclined to adopt the position of Judge Johnson.  Under the version of 28 U.S.C. § 1441 in effect at the time <u>Coker</u> was decided, the mere naming of a fictitious defendant combined with an allegation that the unnamed defendant's residence would defeat diversity or otherwise preclude removal was sufficient to preclude the exercise of diversity jurisdiction.  Thus, the plaintiff's allegations against the fictitious defendants rendered the case unremovable on the face of the complaint.[2]  Judge Johnson, armed with a wealth of state precedent construing the Alabama fictitious party statute, concluded that the plaintiff's decision to maintain his action against two unnamed defendants, which on its face was not subject to removal, amounted to fraudulent pleading of jurisdictional facts.  According to Judge Johnson, it was clear that the plaintiff was aware of the defendants' identities, and yet elected to rely on the fictitious parties to defeat removal, and in his view, this was tantamount to the fraudulent pleading of jurisdictional facts.  While the Court acknowledges that Judge Johnson's

_____

[2] Since the Eleventh Circuit's decision in <u>Coker</u>, § 1441  has been amended and the citizenship of fictitious defendants is now ignored for purposes of determining diversity of citizenship.  28 U.S.C. § 1441(a) ("the citizenship of defendants sued under fictitious names shall be disregarded").

reasoning as it applied to the Alabama fictitious party statute is not without force, the Court finds it unpersuasive in this case.  Unlike in <u>Coker</u>, and as discussed above, this Court lacks the benefit of any guidance regarding the proper construction of the Georgia statute allowing Plaintiff to proceed against unnamed defendants.  Moreover, although the Court acknowledges that there is evidence which strongly indicates that Plaintiff knew or reasonably should have known the identity of Defendant Berry, the Court concludes, for purposes of its jurisdictional analysis, that Removing Defendants have failed to meet their "heavy burden" of establishing by clear and convincing evidence that Plaintiff's failure to immediately assert claims against Defendant Berry was fraudulent.

Finally, the Court notes that the <u>Coker</u> case demonstrates precisely why remand of this action is appropriate.  In that case, the parties proceeded to judgment in federal court, only to have the Eleventh Circuit determine on appeal both that removal of the case was improper and that the district court lacked jurisdiction over the matter.  This is, quite simply, not a result the Court will entertain when there is a certain forum in which all parties may resolve their grievances.  As such, the Court concludes that remand of this action is required.

23

**IV.    Request for Attorney's Fees**

Plaintiff requests that this Court impose costs and fees upon Removing Defendants pursuant to 28 U.S.C. § 1447(c) which provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney's fees, incurred as a result of the removal."   The purpose of § 1447(c) is not to punish defendants for improper removal, but to compensate plaintiffs for expenses associated with obtaining a remand order.  Publix Supermarkets, Inc. v. United Food & Commercial Workers Int'l Union AFL-CIO & CLC, 900 F. Supp. 419, 422 (M.D. Fla. 1995).  Thus, attorney's fees may be awarded even in the absence of a showing of bad faith.  Id. at 421; see Graham Commercial Realty, Inc. v. Shamsi, 75 F. Supp. 2d 1371, 1373 (N.D. Ga. 1998) ("A finding of bad faith or improper purpose by the removing party is not necessary.").  "An award of attorneys' fees is solely in the discretion of the court."  Graham, 75 F. Supp. 2d at 1373; Gray v. N.Y. Life Ins. Co., 906 F. Supp. 628, 631 (N.D. Ala. 1995); see also See Bauknight v. Monroe County, ___ F.3d ___, 2006 WL 1070204, *2 (11th Cir. Apr. 25, 2006) (reviewing denial of costs and fees for abuse of discretion).

That said, the exercise of the Court's discretion is not unfettered.  In

Martin v. Franklin Capital Corp., ___ U.S. ___, 126 S. Ct. 704, 163 L. Ed. 2d

547 (2005), the Supreme Court recently provided significant guidance in the

award of attorney's fees under § 1447(c).  In Martin, the Supreme Court

recognized that statutory language and context of that subsection evidences

neither an intent by Congress to favor or disfavor the award of fees, and as

such, saw "nothing to persuade [it] that fees under § 1447(c) should either

usually be granted or usually be denied."  Id. at 710.  Rather, courts must

address a request for fees in light of the policies motivating Congress'

authorization of such an award.  As the Martin Court recognized, "[b]y enacting

the removal statute, Congress granted a right to a federal forum to a limited

class of state-court defendants.  If fee shifting were automatic, defendants might

choose to exercise this right only in cases where the right to remove was

obvious."  Id. at 711.  At the same time, however,

> [t]he process of removing a case to federal court and then having it
> remanded back to state court delays resolution of the case, imposes
> additional costs on both parties, and wastes judicial resources.
> Assessing costs and fees on remand reduces the attractiveness of
> removal as a method for delaying litigation and imposing costs on the
> plaintiff.

25

Id.  In view of these competing principles, the Court stated:

> The appropriate test for awarding fees under § 1447(c) should recognize Congress' desire to deter removals intended to prolong litigation and impose costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied. In light of these "large objectives," the standard for awarding fees should turn on the reasonableness of the removal.  In applying the general rule of reasonableness, district courts retain discretion to consider whether unusual circumstances warrant a departure in a given case. A court's reasons for departing, however, should be "faithful to the purposes" of awarding fees under § 1447(c).

> In light of these "large objectives," [cit.] the standard for awarding fees should turn on the reasonableness of the removal. Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied. [cits.]  In applying this rule, district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case.

Id.

Applying this standard, the Court finds an award of reasonable attorney's fees and costs inappropriate.  Removing Defendants have raised numerous, more than colorable arguments that this Court has jurisdiction over this action. While the Court ultimately rejects Removing Defendants' position and declines to exercise jurisdiction, the Court finds both that Removing Defendants'

removal of the action was objectively reasonable and that an award of attorney's fees would fail to further the "larger objectives" of § 1447(e).  As such, Plaintiff's request for attorney's fees is denied.

### Conclusion

For the aforementioned reasons, Plaintiff's Motion to Remand to the State Court and for Attorney's Fees [37] is **GRANTED in part and DENIED in part**.  Plaintiff's Motion is **GRANTED** insofar as they seek remand of this action.  Plaintiff's request for attorney's fees is hereby **DENIED**.  This action is hereby **REMANDED** to the Superior Court of Fulton County, Georgia.

**SO ORDERED** this   2nd   day of May, 2006.

RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

27